Good morning, Your Honors, and may it please the Court that David Gossett, for Petitioner, I'd like to reserve three minutes for the public. This case presents a straightforward question. When a foreign carrier enters into commercial agreements with U.S. carriers, markets a roaming plan to consumers in the United States, and accepts payment for calls originating in the United States, is it providing telecommunications services subject to the Communications Act? The statute says yes. It covers all, quote, foreign communications originating in the United States. It covers, quote, all persons engaged in the United States. Well, but why is foreign communications in 152A the relevant clause? Because the claims you're presenting are under 201 and 202, and both of the operative obligations in 201 and 202 apply only to common carriers, and common carrier is defined as a person who does certain things. But there's a clause in 152A that tells us when persons are covered, and it's all persons engaged within the United States in such communications. Is Digicel Haiti a person engaged within the United States in such communications? Yes, it is. FCC focuses on what Digicel Haiti does in Haiti, terminating calls in Haiti. That is entirely irrelevant to this case. Digicel Haiti does in the United States is offer a roaming service within the United States. It sends, it has contracts. So under your view, every foreign carrier throughout the world who currently has a roaming arrangement with the U.S. domestic carrier is subject to FCC jurisdiction and needs a Section 214 certificate? Likely, Your Honor. Is that how the system has operated for the last several decades? I mean, this would be a pretty significant practical change in how the world currently works, wouldn't it? I don't think so, Your Honor. For starters, the FCC has granted a blanket domestic Section 214 authority in 6301, and so to the extent Digicel Haiti is offering a domestic roaming. Sorry. Domestic roaming. So when a Digicel Haiti customer makes a call from California to New York, that's already licensed. They already have the authorities to do that. It is true that they should have authority under Section 214 to make international roaming, and Digicel Haiti apparently does not. But last I saw, there were approximately 10,000 Section 214 international authorizations. There's a process in the CFR for a 14-day essentially automatic approval process for getting international authorization. So, yes, I agree that the FCC hasn't historically required Section 214 authorization for international roaming by an international carrier, and they should change that, but I don't think it's a big deal for them to do so. They have to do that if we agree with your position as a legal matter, right? That would be a consequence. Yes, I think they would probably have to do that. Either they could do it through an extension of the automatic of the blanket authorization that they have for domestic calls, or they could do it through the process of asking for or having the international roaming companies file 214 authorizations. But these are companies, to be clear, that are already affirmatively reaching into the United States to offer service. So any international roaming company has to have entered into a contract with a domestic carrier to offer that service. So they have come here and decided to do that. And to turn it back to Digicel Haiti in this case, they've done a lot more than that, because as soon as someone with a Digicel Haiti service turns on a cell phone in the United States, Digicel Haiti sends them a text message that says, Hey, you're in the United States. We can offer you this special pricing. You can pay us $25 and then pay 9 cents a minute for that call. They reach out. They do that. They accept the money from the United States, and then they offer that service in the United States. Counsel, is there any cases that you can cite to us or anything that lets us know that the FCC can exercise jurisdiction over these foreign carriers when it's only dealing with roaming? I wasn't able to find anything. That's why I'm asking. I don't know that, you know, have we ruled on that before? Are you able to cite anything to me? I'm not quite sure I can come up with an example of precisely that. It is clear that, and this is what, for example, a cable and wireless decision says, that the U.S. cannot regulate the terminating carrier in Haiti. But the proposition that the U.S. can't regulate Digicel Haiti to the extent it has a customer who is making a phone call from New York to California strikes me as truly bizarre. But to follow up, I guess that would be another change in how the FCC handles this by treating roaming just like resale. Well, the FCC has repeatedly treated roaming like resale. This goes to the merits questions, obviously, not the jurisdictional questions. But they talk about in the international roaming order how roaming and resale for certain purposes are different, but for the purposes of that order, they're equivalent. In each instance, a carrier is offering the telecommunications service that was subject to that order. But if the customer of Digicel Haiti who lives in Haiti and goes on vacation to Chicago places a call back to mom in Haiti, that call will go from that person to AT&T or the other carrier with whom Digicel has a relationship. So the call goes from the caller to AT&T. AT&T then sends it to Digicel Haiti. Is that correct? Yes, that's correct. So the caller in the United States is interacting with AT&T. No, Your Honor, they're not. I'm sorry. I didn't mean to interrupt you. How are they not? You just said that that's what happens. The call goes from the caller to AT&T. But the customer has no relationship with AT&T. The customer has a relationship exclusively. But the call is going from the customer. Digicel Haiti is not in the United States in that call. It is going from the caller to AT&T. AT&T then, by virtue of its contract with Digicel Haiti, will then send the call to Haiti where it's terminated. Not quite, Your Honor. Okay. Then tell me why not. Because the point is what AT&T is doing is providing the underlying service within the United States to the transfer point, to the point between the United States and Haiti. But that's no different than a customer using Consumer Cellular, which is similarly a reseller of T-Mobile service. Consumer Cellular owns none of its own facilities. Consumer Cellular is simply a reseller of T-Mobile service. They have wholesale contracts with T-Mobile and they sell that. But that is under the telecommunications service definition. That's the offering of telecommunications for a fee, regardless of the facility's use. But it would be different if Digicel Haiti took the call in the U.S. related to AT&T. Maybe that would be different. But what's happening is the caller places the call and it goes to AT&T and AT&T. You're saying the mere relationship, having a contract with AT&T to bring the call to Haiti from the roamer in the U.S. is enough to make Digicel Haiti operating in the U.S.? I'm not saying that that's the only thing Digicel Haiti is doing. Digicel Haiti is also reaching out to the customer. It is billing the customer. It is telling the customer it can make the phone call. That customer's phone is going to still say Digicel Haiti on it as your carrier. It's going to say roaming. But from the customer's perspective, they only have a contractual relationship with Digicel Haiti. Digicel Haiti is who that customer is paying to make a phone call in California. The fact that Digicel Haiti has chosen to offer that service in the United States through entering into a roaming contract with AT&T is no different than consumer cellular offering that service in California by having an underlying contract with T-Mobile. In each instance, the customer is getting the telecommunications service from a carrier that is providing interstate or foreign communications because the carrier, Digicel Haiti, has told that customer that they can have access to their service in California or Oregon or Minneapolis. So this is why. I guess this may not matter, but I guess I'm trying to understand. There's a reference in the commission's order to Digicel USA, but there's no contention here either on the merits or the jurisdiction that it turns somehow on a separate entity. No. Digicel USA is, in fact, the company that owns the wire between Miami and Haiti. But just like we are not paying attention to the service in Haiti, the termination of calls in Haiti for purposes of our claim of jurisdiction, we're also not paying attention to that termination there. What we are focused on is the fact that any customer of Digicel Haiti in the United States with a cell phone gets a text message saying, hey, we noticed that you're in the United States. You know, you can use this SIM card, this self-service that we are offering you. You can pay us money to make phone calls from the United States. You don't have to go out and buy a T-Mobile cell phone to make your phone calls in the United States. We will offer you that service. We'll offer you that service domestically and roaming back to Haiti. And so we think that that falls plainly within the definition of telecommunication service. It's service offered regardless of the facilities used, and it is the provision of interstate and foreign communication by radio by a company engaged within the United States in doing so. This is why, I mean, I'm repeating myself, but I think the fundamental error in the FCC's sort of thinking about this case is focusing on the fact that Digicel Haiti terminates calls in Haiti. I mean, Digicel is part of a multinational corporation that also terminates calls in Tonga. That is similarly irrelevant to our claim of jurisdiction here, and it wouldn't give Tonga jurisdiction over these calls. What happened here, though, was the roaming in the United States, which is a form of resale, as the FCC has previously said. Do you want to save your three minutes for rebuttal? Oh, okay. Can I take one minute on the merits and then turn to rebuttal? You're using your time. I'm sorry. I hadn't expected the jurisdictional point to take quite so long. On the merits, the FCC operates as if we have done something wrong here when all we were doing is precisely what the FCC has for 50 years, said is the way that we generate competition in the telecommunications market. Companies engage in arbitrage. They figure out different ways to offer service for less. That redounds to the benefit of competition and consumers in the United States. It's just like how in the 90s you would buy a callback card in the supermarket to make cheaper calls than AT&T was offering for you. With that, if there are no questions, I'll reserve the remainder of my time. One factual question. I assume that the proceeding in the District Court of Oregon, that no final judgment has been entered because they're waiting for this proceeding to be resolved. That is precisely correct. Then when it's resolved, they'll resolve the cross-claims and enter a final judgment. That is right. And then there would be an appeal. And then there will be another appeal back to this court. Yes. Okay. All right. Great. Thank you. Thank you, Your Honors. All right. Then we'll hear first from Ms. Flood. Good morning. May it please the Court. Maureen Flood for the Federal Communications Commission in the United States. Your Honors, I think you understand the jurisdictional issues in this case, but I'd just like to make a few points. Based on some of the things that Mr. Gossett said, and I'll be brief. First of all, as you recognized, were the commission defined that it has authority over Digicel, it would disrupt well-settled law. The commission has never found that it has authority over a foreign wireless carrier that offers its customers the ability to make calls from the United States through arrangements with U.S. wireless carriers. Mr. Gossett's only response is, well, it wouldn't be a big deal for the commission to assert authority over those carriers by requiring them to get a Section 214 authorization. But he ignores one of the most important points in the order, which is that if we asserted authority over these carriers, there could be serious extraterritorial consequences. If the commission adjudicates complaints against foreign wireless carriers like Digicel, foreign regulators might start adjudicating complaints against U.S. wireless customers that provide their customers, wireless carriers that provide their customers the ability to make calls from abroad back to the United States. So what's your response to his argument that, look, the Digicel Haiti customers who come to the United States and then are making calls within the United States are, during that time, operating no different than a consumer cellular customer because they're just using the service of a U.S. carrier that's been arranged. So Digicel Haiti is operating like a reseller during the time the customer is in the U.S. What's your response to that? My response to that is that they're very different because Digicel has roaming arrangements with AT&T and T-Mobile. Consumer cellular has a resale arrangement. And just briefly, as we pointed out, the commission has codified the distinction in its rules, and it's been adamant that they're two separate things. Let me explain just functionally how they are different. In a resale arrangement, a carrier like consumer cellular will purchase service from a facilities-based carrier, market that service as its own within the facilities-based carrier service area. So consumer cellular, for example, might buy service from AT&T in California and resell it as consumer cellular service. Here, Digicel had a roaming arrangement. In a roaming arrangement, it involves two facilities-based carriers. So Digicel has a network in Haiti. It offers its customers prepaid wireless service, which includes roaming calls from the United States to Haiti via SIM cards in Haiti.  Digicel can't provide those roaming calls or the U.S. leg of those calls in the United States. It doesn't have facilities here. That's why it has arrangements with AT&T and T-Mobile. They provide the underlying – they carry the leg of the U.S. call back to Haiti, but it's a roaming arrangement because the call path is split between Digicel in Haiti and AT&T and T-Mobile in the United States. What about the Haitian tourists? My Haitian tourist is in Chicago, and she makes a call because she wants to make a dinner reservation. She's making a call within the United States that assumed will be done and carried on a domestic carrier. Why isn't that like a resale arrangement? Because, Your Honor, when we look at jurisdiction, and as you pointed out, Section 2A of the Act provides that the Act only applies to persons engaged within the United States in interstate and foreign communication, and this segues to a point that I wanted to clarify. When the Commission looks at engaged within the United States, we look at a carrier's role in the path of a call. So the Commission has interpreted Section 2A of the Act to apply to carriers that handle calls within the United States, right, so AT&T and T-Mobile, or carriers that transfer calls from the United States to a foreign country. Okay, so here, Your Honor, AT&T and T-Mobile, they are engaged within the United States because they are carrying that call from Chicago to another point in the United States for Digicel Haiti. And we regulate AT&T and T-Mobile, but we don't regulate Digicel Haiti because Digicel Haiti's only role in the path of a roaming call happens once the call arrives in Haiti. It terminates it on its network. And, you know, our view of jurisdiction, our interpretation of Section 2A, and our interpretation of our jurisdiction is consistent with precedent from your sister circuits. In the Verity case, the Second Circuit held that the Commission, that Section 2A of the Act, prohibits the Commission from regulating carriers that simply terminate calls in foreign countries. That's Digicel. Digicel's only role in a roaming call is to terminate that call in Haiti. Likewise, in the Cable and Wireless case, the D.C. Circuit held that the Commission lacks authority to directly regulate a foreign carrier's activities in a foreign country. Here, UPM is arguing that Digicel acted unjustly and unreasonably in deactivating the SIM cards that UPM was using in its covert arbitrage scheme. Were the Commission to find for UPM, we would be directly regulating Digicel in Haiti because that is where Digicel deactivated the SIM cards. Ms. Flood, I guess to invert the conventional question, is there a way you would prefer to win as between the more specific kind of on the merits, which seem a little more, well, I'm not sure from the Commission's standpoint because we'd be clarifying the statute kind of either way. Is there one that gives the Commission more room to do its role than another, either jurisdiction or merits? Sure, Your Honor. We would appreciate it. As you point out, the holdings are independent. The Commission dismissed for want of jurisdiction, and we denied the complaint on the merits. But we're not required to reach your jurisdiction in order to reach the merits.  Thank you. I appreciate it. Yes, and the Commission would prefer that the court deny the petition for review on the merits and not reach the jurisdictional issues. And the reason for that is the jurisdictional issues are very complicated. You would prefer us not to reach the jurisdiction? No. That would seem to be the broader ruling that would be the clear, bright-line rule for you to live with. Well, our concern, Your Honor, is that the jurisdictional issues are very complicated, and I don't mean to sort of diminish in any way the capabilities of this panel to write a decision that affirms the Commission. But the inter-carrier compensation regime is very complicated, and so we would prefer that you rule on the merits. But here's the thing. A win's a win. If you want to touch the jurisdictional issue. But a jurisdictional rule would also provide a rule under which future commissioners would have to live under, right, that they would lack that flexibility. Yes. We always love to preserve as much of our discretion that we have. But as I said, a win's a win. If you would like to rule for us on the jurisdictional issue, that's fine. Our preference is for you to address the merits. We think we have a very strong case on the merits. I'm happy to talk about the merits if you'd like. I just wanted to start by clarifying a couple of things that Mr. Gossett said. May I turn to the merits? Okay. Your argument. Thank you.  You know, UPM's argument boils down to even though they were using Digicel SIM cards to deceive Digicel, Digicel acted unjustly and unreasonably in deactivating the SIM cards when it discovered that it was being deceived. And the commission did not find that argument to be the least bit persuasive. To start, the commission found that Digicel was under no obligation to resell its roaming service to UPM, that it didn't act unjustly and unreasonably in deactivating the SIM cards used by UPM. Ms. Flood, how much should kind of the pro-consumer rationale of UPM's conduct matter in this calculus? Well, Your Honor, a few points. It shouldn't and here's why. The commission found that – Because of the particular rationale or because pro-consumer rationales don't generally – No, it's not. It's that the commission weighed the purported consumer benefits against the fraudulent, the deceptive behavior that UPM was engaged in and decided that whatever the pro-consumer benefits of this arbitrage scheme were, it wasn't going to condone a scheme that was based on a practice that's contrary to the commission's rules. Now, I would also point out that there was no evidence in the record that UPM's arbitrage operation was actually reducing the rate that Digicel was charging to terminate calls in Haiti, but I do want to point something out quickly. The commission has a rule. You'll find it in the addendum to our brief. It's Rule 64.1601, and the commission promulgated that rule to stop what UPM was doing here. The rule provides that every carrier in the path of a call has to pass along the telephone number of the party making the call, and the reason for that is the commission – There was a practice called phantom traffic where carriers like UPM would take the telephone number off a call so they could disguise where the call was coming from, so when the terminating carrier like Digicel received the call, they wouldn't know how to bill for the traffic. Okay, so they were basically manipulating the telephone number so they could charge a cheaper rate. Here the commission – if the commission found for UPM, right, if the commission found that Digicel acted unjustly and unreasonably in terminating the SIM cards, it would be condoning a practice that the commission promulgated a rule to prevent, and so the commission obviously in this situation felt that it couldn't endorse that behavior. So what would we have to say then in terms of, again, thinking about the commission's – what would we have to say under our standard of review to deny the petition on the merits? What you would have to say, Your Honor, is that the commission reasonably exercised its discretion to balance the factors here, the deception caused – created by UPM's arbitrage scheme and the precedent that that would create, essentially forcing the commission to endorse a practice that's contrary to its rules versus their unsubstantiated claims about consumer benefit. You know, I'd also point out, Your Honor, that the commission is against arbitrage. I mean, I want to be clear about that. It's not that UPM was conducting arbitrage. It was the deception. You know, if UPM wants to come in and try to undercut Digicel's termination rate in Haiti, there are a number of things it could have done. It could have come to the commission and filed a petition asking the commission to reevaluate the 23-cent-per-minute termination rate in Haiti. It could have gone to Digicel and asked for a traditional resale arrangement, whereby it could resell Digicel's service. It didn't do any of those things, right? And that was the problem here. The commission could not endorse a scheme that was contrary to its rules when there were clearly options available to UPM that would reduce the rate in Haiti, right, without engaging in a practice that would violate the commission's rules. But I would also point out that independent of the deception, you know, there were independent business reasons, legitimate business reasons for Digicel to terminate the SIM cards. UPM's arbitrage operation caused the amount of roaming traffic from the United States to Haiti to increase substantially, which disrupted Digicel's roaming arrangements within Haiti. Let's let, I guess, back to the standard of review. I think you referred to reasonably exercised its discretion. This is under 706-2, is it? So, I mean, are we saying that the determination that it was not unreasonable is not contrary to law or it's not an abuse of discretion threshold? Of course, we're not deferring to you on what those statutory terms mean. So could you give me a little bit more on kind of what that would hold under your standard? Sure. It's not an abuse of discretion. So the court has to look at whether the commission's decision was reasonable and reasonably explained. And it was reasonable for the commission to find that it would not, it was reasonable for the commission to determine that any purported competitive benefits from UPM's arbitrage scheme were not, did not outweigh forcing the commission to endorse a practice that's contrary to its rules. Also, there was evidence in the record that independent of the fraudulent behavior, that deceptive behavior on UPM's part, there were legitimate business reasons. So it's kind of reasonable cubed that the agency has acted within a zone of reasonableness and reasonably considered whether UPM's conduct was reasonable or not. I think that's a good, I think that would be more than cubed. I think that would be the fourth power, and that's correct. One of the pleasures of being, working in administrative law is that you use the word reasonable quite a bit. But I think that is a correct formulation. I mean, what it comes down to at the end of the day is the commission has the expertise and the discretion to choose between competing factors here, right? And the commission's determination, right, that the commission's unwillingness to endorse a deceptive arbitrage scheme where there was no evidence in the record that that scheme was actually producing any competitive benefits is reasonable. In making that determination, the commission, just to be clear, relied on its own assessment of the facts and not on the jury verdict so that it stands independently of the jury verdict. Is that correct? Absolutely. And when you read the orders, Your Honor, both the order and the order. If the jury verdict were to get tossed out on appeal for whatever reason, it would not affect the merits ruling of this part of the whole dispute. Yes, Your Honor. Unless the court has any further questions, I ask that you deny the petition for review. All right. Thank you. Thank you, counsel. All right. We'll hear now from Mr. Neal. Thank you, Your Honor. It may please the court. Jason Neal for Digicel Haiti. I'd like to make just a few quick points in the time that I have. I won't belabor the point on jurisdiction, but I just do want to respond to one point that my friend made. Do you agree with his characterization of where things stand in the civil matter in Oregon? Yes, Your Honor. With respect to jurisdiction, one point from my friend was about the way in which Digicel Haiti communicates with people inside the United States about its service. Digicel Haiti does not put up billboards. It does not advertise on TV. It does not offer its service in the United States broadly to the public. It sends text messages to its subscribers saying, you're in the United States. You are roaming. If you would like to use the roam like your home pricing plan, please go ahead and do that. It's not holding itself out inside the United States, either probably to make calls within the United States or anywhere else. Is there anything reciprocal about this? I mean, so if a U.S. account holder goes to Haiti and we get a roaming notice that says, oh, if you want to continue using this, you get the $10 roaming rate or something. Do Haiti's authorities or generally do other authorities elsewhere take that for jurisdiction? Not to my knowledge, Your Honor. You know, I'm an AT&T subscriber. When I go abroad, I get a text message from AT&T letting me know that I am paying by the minute unless I would like to subscribe to the International Day Pass, a pricing plan that AT&T offers. I can't speak to the practices of countries across the board, but to my knowledge, no. And what we know here is the FCC, over decades of international roaming agreements from foreign carriers around the world, allowing their subscribers to come to the United States and Rome using U.S. carriers' networks, the FCC has never thought of that as a hook for its jurisdiction. If I just make a couple of points on the merits, UPM has presented itself as a reseller of Digicel Haiti's service, and I think the conducted issue here just shows that UPM was not looking to resell Digicel Haiti's service. As my friend from the FCC explained, resale agreements typically involve negotiating a contract, entering into what is known as a resale agreement. There are terms that differ significantly from how international roaming agreements work. What we have here with UPM is that it went to Haiti or it had agents in Haiti purchase 8,000 or so SIM cards, ship them to the United States, and put them in a computer to use human behavior simulation to make it look as though the calls that UPM was transmitting from the United States and perhaps elsewhere to Haiti were individual Digicel Haiti subscribers. That's not the behavior of a reseller. If they wanted to try to enter that into that kind of agreement, they could have come to Digicel Haiti and tried. We could have seen how that would play out, but that's simply not what they were trying to do here. Third, just to expand for a moment on the legitimate business interests that underlie why Digicel Haiti cut off the SIM cards that UPM was using here, I'll be very brief. The international roaming agreements are reciprocal. There are assumptions made between the carriers about how much traffic is going to go from here, the United States, to Haiti, or from Haiti to the United States. What UPM was doing here shifted the balance very, very significantly in a way that disrupted Digicel Haiti's agreements with the U.S. carriers. We had trouble with those negotiations, and they ultimately asked to limit the number of minutes that people from Haiti could use roaming the United States. Thank you, Your Honor. All right. Thank you, counsel. We'll hear rebuttal now. Thank you, Your Honors. I'm going to start on the merits. There was nothing deceptive about what Digicel Haiti did. There were no terms and contracts. Stop right there. How is it not deceptive to use software that communicates a different number to Digicel Haiti than the originating call number for the purpose of hiding from Digicel Haiti that the call comes from a number that is not a Digicel Haiti subscriber? How is that not fraudulent? That's not what happened, Your Honor. The number that was communicated was the Digicel Haiti number of the SIM card. The technical problem that they're focused on— As I understand the scheme, somebody calls in the U.S., wants to go to Haiti. They end up with you. You have the SIM card with the number, and you send that number on rather than the number that actually is the incoming number from the person who came to you and send that on to Haiti. So it's actually a call between a person with a number that's not Digicel Haiti to someone in Haiti, and that fact is masked and hidden from Digicel Haiti. And a jury found that deceptive. The FTC independently found that deceptive, and it sure sounds deceptive. That's actually not what was found deceptive. It's not about the number being passed on. The number being passed on is the number of the Digicel SIM card, of the Digicel service, because that's the only number that technically can be passed on. What was found to be deceptive was that— and this is a question of Oregon tort law, not a question of Communications Act— was the fact that we used these 8,000 different SIM cards and didn't just have one SIM card be used constantly until it ran out of money. And the reason we did that was because though there were no terms and conditions for any of what we did, UPM kept on cutting us off. The only thing they were doing was stopping us from doing something we were legally allowed to do, which was make these calls. There were no terms and conditions. There is no rule. There is, in fact, an FCC rule that says you can't cut off another carrier for not passing along a phone number. That's the 2011 Connect America fund rule. It says you can't actually cut someone off for that. The other thing that's misleading about the way the FCC presented this case, it's important to understand UPM's customers are wholesale— UPM's a wholesaler. Its customers are other carriers. So the way that UPM is saving people money is that Verizon in Minneapolis has a contract with UPM to be able to offer Verizon's customers cheaper calls to Haiti because we can offer those calls at 10 cents a minute because we're paying 9 cents a minute for those calls back to Haiti rather than the 23 cents a minute that Digicel USA at the border is charging for that termination. That's precisely the normal kind of arbitrage that the FCC has historically allowed. There is, in fact, an expert economic witness in the record. The FCC said there is no evidence in the record. We had an expert. We presented that expert to the FCC. They simply ignored it. And the fact that the Haitian government may not have liked that is also fundamentally irrelevant here. That's the point of the 2003 international callback order where, similarly, international companies didn't like the fact that U.S. carriers were figuring out ways to have international calls more cheaply. The international companies were saying, we're trying to block this. And the U.S. said, we don't care what you say. We're regulating the U.S. domestic market. And so the example I think I want to end with, if that's okay, is let's say that Digicel Haiti, in its roaming service, decides to offer a different rate for calls to blacks and whites on Digicel SIM cards sitting in Chicago. And under the FCC's interpretation here, that wouldn't violate the Communications Act because Digicel Haiti, which is the only one charging for that call, could charge blacks $0.20 a minute to call across town and whites $0.10 a minute. And that would be fine because Digicel Haiti isn't a carrier. They can engage in a form of discrimination that violates Section 202 because they're not covered. Their discrimination against UPM in offering these arbitrage calls back to Haiti under the $25 plus $0.09 a minute offering that had nothing in the offering that said, we limit this to- I've let you go quite a bit over. I'm sorry, Your Honor. Thank you very much. Thank you. All right. The case just argued will be submitted.
judges: COLLINS, JOHNSTONE, ALBA